# UNITED STATES  DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **CHRIS A. JEFFERSON** | **CIVIL ACTION** |
| **versus** | **NO. 10-782** |
| **NEW ORLEANS CRIMINAL**<br>**DISTRICT COURT, DIVISION F** | **SECTION: "N"(1)** |

## REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts.  Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  See 28 U.S.C. § 2254(e)(2).  Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **GRANTED**.

Petitioner, Chris A. Jefferson, is a state prisoner incarcerated at the St. Martin Parish Jail, Breaux Bridge, Louisiana.  On March 26, 2007, he was convicted of being a felon in possession of a firearm in violation of La.Rev.Stat.Ann. § 14:95.1.[1]  On September 25, 2007, he was sentenced

---

[1] State Rec., Vol. I of III, minute entry dated March 26, 2007; State Rec., Vol. II of III, jury verdict form.

to a term of fifteen years imprisonment without benefit of probation, parole, or suspension of sentence.[2]  On September 24, 2008, the Louisiana Fourth Circuit Court of Appeal affirmed that conviction and sentence.[3]  The Louisiana Supreme Court then denied petitioner's related writ applications on May 22, 2009,[4] and May 29, 2009.[5]

Petitioner thereafter filed the instant federal application for *habeas corpus* relief.[6] In support of his application, he asserts the following claims:

1. The trial court erred in denying a motion to suppress evidence;

2. The state failed to meet its burden of proof regarding the applicable cleansing period; and

3. The trial court erred in its evidentiary rulings.

The state concedes that the federal application is timely and that petitioner exhausted his remedies in state court.[7]

---

[2] Supplemental State Rec., Vol. I of II, transcript of September 25, 2007; State Rec., Vol. I of III, minute entry dated September 25, 2007.

[3] State v. Jefferson, No. 2008-KA-0470 (La. App. 4th Cir. Sept. 24, 2008) (unpublished); State Rec., Vol. II of III.

[4] State v. Jefferson, 9 So.3d 138 (La. 2009) (No. 2008-K-2523); State Rec., Vol. III of III.

[5] State v. Jefferson, 9 So.3d 162 (La. 2009) (No. 2008-KO-2663); State Rec., Vol. III of III.

[6] Rec. Doc. 1.

[7] Rec. Doc. 13, pp. 3-5.

<u>I.  Standards of Review</u>

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal *habeas corpus* legislation, including 28 U.S.C. § 2254. Amended subsections 2254(d)(1) and (2) contain revised standards of review for questions of law, questions of fact, and mixed questions of law and fact.  The amendments "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law."  <u>Bell v. Cone</u>, 535 U.S. 685, 693 (2002).  Provided that the state court adjudicated the claim on the merits, pure questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1) and pure questions of fact are reviewed under § 2254(d)(2).  <u>Hill v. Johnson</u>, 210 F.3d 481, 485 (5th Cir. 2000).

As to questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision unless it "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).  Courts have held that the "'contrary to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning."  <u>Bell</u>, 535 U.S. at 694.

Regarding the "contrary to" clause, the United States Fifth Circuit Court of Appeals has explained:

> A state court decision is contrary to clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the [United States] Supreme Court's cases.  A state-court decision will also be contrary to clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of the [United States] Supreme

Court and nevertheless arrives at a result different from [United States] Supreme Court precedent.

Wooten v. Thaler, 598 F.3d 215, 218 (5th Cir. 2010) (internal quotation marks, ellipses, brackets, and footnotes omitted).

Regarding the "unreasonable application" clause, the United States Supreme Court has explained:

> [A] state-court decision can involve an "unreasonable application" of this Court's clearly established precedent in two ways. First, a state-court decision involves an unreasonable application of this Court's precedent if the state court identifies the correct governing legal rule from this Courts cases but unreasonably applies it to the facts of the particular state prisoner's case. Second, a state-court decision also involves an unreasonable application of this Court's precedent if the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.

Williams v. Taylor, 529 U.S. 362, 407 (2000). The Supreme Court has noted that the focus of this inquiry "is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in Williams that an unreasonable application is different from an incorrect one." Bell, 535 U.S. at 694.

As to questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); see also 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant

shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

II. Facts

On direct appeal, the Louisiana Fourth Circuit Court of Appeal summarized the facts of this case as follows:

> New Orleans Police Officer Devin Joseph testified that on March 29, 2005 he was on proactive patrol in a marked police unit in the lower Ninth Ward of New Orleans with Officers Michael Pierce and Daniel Bagneris. At approximately 11 p.m., the three officers assisted other police officers who were setting up a perimeter around a city block into which a subject had run. As Officers Joseph, Pierce and Bagneris drove to their assigned corner, Officer Joseph observed defendant coming out of a driveway. The officers illuminated defendant with their spotlight, thinking that defendant was the suspect the other police officers were looking for. At that time Officer Joseph noticed defendant clutching a bulge in his shirt. Officer Joseph could not tell what was under the shirt at that point. Defendant had come down the driveway and was looking down the sidewalk in the direction of other officers who had just run past. When he was spotlighted, defendant turned, saw the three officers in their vehicle, then made a "U-turn" and walked briskly back up the driveway. Officer Joseph's team radioed the other officers. Shining the spotlight, Officer Joseph and his team also noticed several other individuals sitting on the stairs of the residence. These individuals scrambled to their feet and ran into the residence with defendant. Officer Joseph saw one of the individuals, later identified as co-defendant Terrence Harris, pick up a rifle before he ran inside. Defendant was the last to run in. Officer Joseph said that as defendant pushed the door open, "his shirt raised up and we observed the barrel of a shotgun under his shirt." Officer Joseph exited the vehicle and followed inside the residence behind the suspects. He saw a bedroom door close and heard someone running up the stairs. The officer went upstairs and observed an individual, later identified as Darnell Dorsey, taking off his clothes. Dorsey was in possession of crack cocaine. Officer Joseph identified the police report he prepared in connection with the incident and noted an evidence receipt with the same item number as the report, C-54661-05.

– 5 –

On cross examination Officer Joseph stated that he did not recall any lights being in the driveway when the officers first illuminated defendant. Officer Joseph confirmed that he and the two other officers were still in their police car, shining the vehicle's spotlight down the driveway, when the individuals on the back porch scrambled to their feet and began running into the residence. Officer Joseph said he was perhaps fifty feet away from defendant when he first saw him. He confirmed that he was still in his car, and approximately twenty-five feet away, when he observed defendant clutching the barrel of the shotgun. Officer Joseph described the sawed-off shotgun as a single-barrel, blue-steel, pump-action shotgun with a pistol grip, approximately fourteen inches in length. He said he did not see the gun again until after it had been seized from defendant by the other officers.

New Orleans Police Officer Michael Pierce testified that he was patrolling in the same vehicle with Officers Joseph and Bagneris on the night in question, and he participated in the arrest of both the defendant and codefendant Terrance Harris. Officer Pierce was driving that night, and his testimony generally tracked that of Officer Joseph. Officer Pierce noted that defendant did not see the police officers until he was spotlighted. Officer Pierce also observed a bulge in the front part of defendant's clothing, and said defendant had both hands positioned "like he was holding something, like he was concealing something." According to Officer Pierce, when defendant saw the officers, he immediately turned around and began running toward the rear of the residence. Officer Pierce spotlighted the rear of the house, and he saw Terrence Harris and another subject sitting on the steps, as well as a rifle leaning against the stairway next to he back door. When Harris and the other subject saw the officers, Harris grabbed the rifle and ran into the residence. The officers followed. Officers Pierce and Bagneris went into a bedroom on the first floor, where Officer Pierce observed Harris on his knees, putting a rifle under the bed. The rifle was the only thing under the bed. Two other individuals were on the other side of the room watching television. Officer Pierce, who testified that he was the last officer to exit the police car, confirmed that defendant had not yet gone into the residence at the time Officer Pierce exited the vehicle.

New Orleans Police Sergeant Hans Ganthier testified that on the night in question he was the supervisor in charge of the officers involved in the operation, and that he had participated in the arrest of defendant. Sgt. Ganthier and his partner Sgt. Sherman Joseph responded to a call for assistance put out by other officers. They

pulled their vehicle behind Officer Joseph's vehicle. Sgt. Ganthier said Officer Joseph had his spotlight pointed down an alley, and he was proceeding down that alley. Officer Joseph told Sgt. Ganthier he had seen a subject walking into the house with a shotgun. Sgts. [sic] Ganthier and Sgt. Sherman Joseph went into the residence, where Sgt. Ganthier said he heard someone going up the stairs. He and Sgt. Joseph went into a bedroom where they found defendant hiding under a bed. They ordered defendant to come out. He refused. Sgt. Ganthier grabbed defendant's legs, attempting to pull him out. Sgt. Joseph flipped the mattress over, at which point Sgt. Ganthier observed a shotgun on the floor next to defendant.

New Orleans Police Sergeant Sherman Joseph's testimony generally tracked that of Sgt. Ganthier, his partner on the night defendant was arrested. Additionally, Sgt. Joseph recalled that before he, Sgt. Ganthier and Officer Joseph had entered the residence, Officer Joseph had told them the subject had a gun.

New Orleans Police Department Officer George Jackson was qualified by joint stipulation as an expert witness in the field of fingerprint identification. He took defendant's fingerprints in court that day. He matched the thumb prints he took of defendant on the day of trial to thumb prints on an arrest register reflecting an arrest in 1992, included in a packet with a certified copy of a conviction with the same item number. It was later stipulated by the parties that defendant had pleaded guilty on August 26, 1993 to manslaughter and on the same day had been sentenced to twenty-one years at hard labor.

Donna Thompson testified that she was the assistant supervisor of the property and evidence room for the Clerk of the Criminal District Court for the Parish of Orleans. She testified that the gun seized from the defendant could not be located because the identification tag attached to it, or the envelope in which it was contained, had dissolved during the flooding of the evidence and property room as a result of Hurricane Katrina. She confirmed, however, that the clerk's office had received evidence in the case. She then identified copies of evidence cards typed up by the clerk's office, which cards had the notation "Terrence Hill, *et al*," on them, and an item number, C-54661-05. She also identified the gun

evidence card, which listed two guns:  a Woodland Mark, serial number unknown; and an Amoco carbine.[8]

### III.  Petitioner's Claims

As noted, petitioner asserts three claims in his federal petition.  Although the undersigned recommends that relief be granted based on petitioner's second claim, all three claims will be addressed in this Report and Recommendation.

### A.  Fourth Amendment Claim

Petitioner first claims that the trial court erred in denying a motion to suppress evidence.  The state argues that claim, which is based on the Fourth Amendment to the United States Constitution, is not reviewable in this federal proceeding.  For the following reasons, this Court agrees.

In Stone v. Powell, 428 U.S. 465 (1976), the United States Supreme Court held: "[W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search and seizure was introduced at trial."  Id. at 494 (footnote omitted); see also Janecka v. Cockrell, 301 F.3d 316, 320 (5th Cir. 2002).  The Stone bar applies even if the state court rulings regarding the Fourth Amendment claim were in fact erroneous. Swicegood v. Alabama, 577 F.2d 1322, 1324 (5th Cir. 1978).

---

[8] State v. Jefferson, No. 2008-KA-0470, at pp. 1-5 (La. App. 4th Cir. Sept. 24, 2008) (unpublished); State Rec., Vol. II of III.

In the instant case, defense counsel filed a motion to suppress the evidence.[9] That motion was denied at hearing on November 21, 2006.[10] Petitioner challenged that ruling on direct appeal. Rejecting the claim, the Louisiana First Circuit Court of Appeal held:

> [D]efendant argues that the trial court erred in denying his motion to suppress the evidence.
>
> Warrantless searches and seizures fail to meet constitutional requisites unless they fall within one of the narrow exceptions to the warrant requirement. State v. Edwards, 97-1797, p. 11 (La. 7/2/99), 750 So.2d 893, 901. On trial of a motion to suppress, the State has the burden of proving the admissibility of all evidence seized without a warrant. La. C.Cr.P. art. 703(D); State v. Jones, 97-2217, p. 10 (La. App. 4th Cir. 2/24/99), 731 So.2d 389, 395. A trial court's ruling on a motion to suppress the evidence is entitled to great weight, because the court has the opportunity to observe the witnesses and weigh the credibility of their testimony. State v. Devore, 2000-0201, p. 6 (La. App. 4 Cir. 12/13/00), 776 So.2d 597, 600-601; State v. Mims, 98-2572, p. 3 (La. App. 4 Cir. 9/22/99), 752 So.2d 192, 193-194. In reviewing a trial court's ruling on a motion to suppress, an appellate court is not limited to evidence adduced at the hearing on the motion to suppress; it may also consider any pertinent evidence given at trial of the case. State v. Nogess, 98-0670, p. 11 (La. App. 4 Cir. 3/3/99), 729 So.2d 132, 137.
>
> A law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense and may demand of him his name, address, and an explanation of his actions. La. C.Cr.P. art. 215.1(A); Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).
>
> "Reasonable suspicion" to stop is something less than the probable cause required for an arrest, and the reviewing court must look to the facts and circumstances of each case to determine whether a detaining officer had sufficient facts within his knowledge to justify an infringement of the suspect's rights. State v. Jones, 99-0861, p. 10 (La. App. 4 Cir. 6/21/00), 769 So.2d 28, 36-37; State v. Littles, 98-2517, p. 3 (La. App. 4 Cir. 9/15/99). In assessing the reasonableness

---

[9] State Rec., Vol. II of III.

[10] State Rec., Vol. I of III, minute entry dated November 21, 2006.

of an investigatory stop, the court must balance the need for the stop against the invasion of privacy that it entails. State v. Carter, 99-0779, p. 6 (La. App. 4 Cir. 11/15/00), 773 So.2d 268, 274. The totality of the circumstances must be considered in determining whether reasonable suspicion exists. State v. Oliver, 99-1585, p. 4 (La. App. 4 Cir. 9/22/99), 752 So.2d 911, 914. The detaining officers must have knowledge of specific, articulable facts, which, if taken together with rational inferences from those facts, reasonably warrant the stop. State v. Dennis, 98-1016, p. 5 (La. App. 4th Cir. 9/22/99), 753 So.2d 296, 299. In reviewing the totality of the circumstances, the officer's past experience, training and common sense may be considered in determining if his inferences from the facts at hand were reasonable. State v. Hall, 99-2887, p. 4 (La. App. 4 Cir. 10/4/00), 775 So.2d 52, 57; State v. Cook, 99-0091, p. 6 (La. App. 4 Cir. 5/5/99), 733 So.2d 1227, 1231. Deference should be given to the experience of the officers who were present at the time of the incident. State v. Ratliff, 98-0094, p. 3 (La. App. 4 Cir. 5/19/99), 737 So.2d 252, 254.

Flight from police officers, alone, will not provide justification for a stop. State v. Benjamin, 97-3065, p. 3 (La. 12/1/98), 722 So.2d 988, 989; State v. Sartain, 98-0378, pp. 17-18 (La. App. 12/1/99), 746 So.2d 837, 849. However, flight from police officers is highly suspicious and, therefore, may be one of the factors leading to a finding of reasonable suspicion to stop. State v. Fortier, 99-0244, p. 7, (La. App. 4 Cir. 1/26/00), 756 So.2d 455, 459-460, citing Benjamin. Given the highly suspicious nature of flight from a police officer, the amount of additional information required in order to provide officers reasonable suspicion that an individual is engaged in criminal behavior is greatly lessened. Benjamin, *supra*; Fortier, *supra*.

In the instant case, police officers who were assisting other officers in searching for a suspect observed the defendant standing in a driveway at its intersection with the sidewalk, looking in the direction of other policemen who had just run past the driveway. The officers also observed defendant holding something under his shirt with both hands. Further, upon spotting Officer Joseph and his team and being illuminated by the vehicle's spotlight, defendant quickly turned around and walked back up the driveway toward the residence. Still spotlighting defendant, the officers observed several subjects on the steps of the residence who stood up and began to run inside of the residence, one of them grabbing a rifle with a long barrel. It was only then that the officers exited the vehicle and went

up the driveway on foot. Officer Joseph, believing that the defendant was the individual for whom the officers had been searching, radioed the other officers.

Based on the officers' observations, the defendant's actions, and the actions of the other individuals, the officers had reasonable suspicion that defendant was committing, had committed or was about to commit a crime, as contemplated by La. C.Cr.P. art. 215.1. It does not matter that defendant might have been on private property when the officers, who were in their police unit traveling on a public street, first saw him concealing something under his shirt. Even assuming defendant was on private property, possibly even residing in the house with the driveway upon which defendant was standing, he was in full view of the public at all times. Therefore, according to the jurisprudence, defendant was in a "public" place within the meaning of the Fourth Amendment and had no reasonable expectation of privacy. See U.S. v. Santana, 427 U.S. 38, 42, 96 S.Ct. 2406, 2409, 49 L.Ed.2d 300 (1976) (defendant in public place for purposes of Fourth Amendment while standing in doorway of her residence); see also State v. Parnell, 2007-37 (La. App. 5 Cir. 5/15/07), 960 So.2d 1091, writ denied, 2007-1417 (La. 1/7/08), 973 So.2d 733; State v. Walker, 2006-1045, p. 5 (La. 4/11/07), 953 So.2d 786, 790 ("It has long been settled that a person may not frustrate an otherwise lawful arrest on probable cause which the police are entitled to make in a public place without a warrant, simply by stepping across the threshold of his home." (citation omitted)).

Officer Joseph testified that while he was still inside the police unit he saw defendant's shirt rise up as defendant scurried inside the residence, and the officer observed the barrel of what he believed to be a shotgun protrude an inch or so from underneath defendant's shirt. At this point Officer Joseph had probable cause to arrest defendant for illegally carrying a weapon, a concealed firearm, in violation of La. R.S. 14:95(A)(1), prescribing the intentional concealment of any firearm on one's person. It can be noted that, while a private citizen may lawfully carry a concealed *handgun* under authority of a statewide permit, no state law authorizes the carrying of a concealed *shotgun*.

In the instant case, defendant was the last subject to flee into the residence. At the time he ran into the residence, the police had probable cause to arrest him for carrying a concealed shotgun. The officers also had the right to make a warrantless entry into the residence in hot pursuit of defendant in order to make the arrest. Therefore, the shotgun was lawfully seized during the apprehension

of defendant. The trial court properly denied defendant's motion to suppress the evidence.

We reject this assignment of error.[11]

Petitioner also presented his claim to the Louisiana Supreme Court,[12] which likewise denied the claim.[13]

Based on the foregoing, it is clear that petitioner was afforded a full and fair opportunity to litigate his Fourth Amendment claim in state court. Therefore, Stone bars this Court from granting petitioner relief based on that claim.

### B. Cleansing Period

Petitioner next argues that the state failed to meet its burden of proof regarding the applicable cleansing period on the underlying criminal charge. On direct appeal, the Louisiana Fourth Circuit Court of Appeal rejected that claim, holding:

> [D]efendant argues that the State failed to prove the absence of the statutory ten-year period of limitation which is an element of the crime of possessing a firearm by a convicted felon.
> La. R.S. 14:95.1(A)(1) provides, in pertinent part, that it is unlawful for any person who has been convicted of a crime of violence as defined by La. R.S. 14:2(B) which is a felony – which includes the crime of manslaughter – to possess a firearm. However, La. R.S. 14:95.1(C) states that the prohibition against convicted felons possessing firearms does not apply where the felon has not been convicted of any felony for a period of ten years from the date of completion of sentence, probation, parole or suspension of sentence. Thus, the absence of the ten-year statutory period of

---

[11] State v. Jefferson, No. 2008-KA-0470, at pp. 5-9 (La. App. 4th Cir. Sept. 24, 2008) (unpublished); State Rec., Vol. II of III.

[12] State Rec., Vol. III of III, Petition for Writ of Certiorari (Case No. 08-KO-2663).

[13] State v. Jefferson, 9 So.3d 162 (La. 2009) (No. 2008-K-2663); State Rec., Vol. III of III.

limitation is one of the essential elements of the crime. See <u>State v. Husband</u>, 433 So.2d [269], 271 (La. 1983).

In the instant case, the only evidence of a prior felony conviction by defendant was his August 26, 1993 conviction for manslaughter, for which he received the then maximum sentence of twenty-one years at hard labor. Therefore, the State had to prove that the date of defendant's arrest (March 29, 2005) was within ten years of the date defendant completed his sentence, including any probation, and/or parole, for the manslaughter conviction. The State introduced no evidence on this issue.

However, given that defendant was arrested for the instant offense on March 29, 2005, only eleven and one-half years after having received a twenty-one year sentence, it would impossible for defendant to have served the full term of and been discharged from his original sentence (even assuming defendant had been incarcerated from January 1, 1992, the stipulated date of the manslaughter offense, and had received credit for time served from that date) at the time of this arrest. Moreover, defendant could have been out on parole at the time he was arrested in the instant case, but could not possibly have been discharged from or completed his parole more than ten years prior to the instant arrest.

As a first-felony offender, defendant would not have been eligible for parole until serving one-third of his sentence. La. R.S. 15:574.4(A)(1). Therefore, he could not have been released on parole until January 1, 1999, at the earliest, which is still within the ten-year time period. Even considering that defendant could have been released early because of "good time" (which accrues at the rate of two days for every day served pursuant to La. R.S. 15:571.3), he would not have been eligible for such a release until 2002. Moreover, an individual released on "good time" is released as if on parole, and as a parolee – either on straight parole or "good time" parole – the individual cannot be discharged from parole until the completion of his original sentence date, which in this case would be January 1, 2013, at the earliest. See La. R.S. 15:571.5 and La. R.S. 15:574.6.

In support of this argument, defendant cites <u>State v. Knight</u>, 99-138 (La. App. 5 Cir. 6/30/99), 738 So.2d 1179, where the Fifth Circuit reversed the defendant's conviction for possession of a firearm by a convicted felon because the State failed to produce evidence that the ten-year cleansing period of La. R.S. 14:95.1(C) had elapsed. In <u>Knight</u>, the defendant had told police when he was arrested for the offense on June 28, 1998 that he was on parole for

aggravated crime against nature. At trial, the defendant stipulated that he had been found guilty of aggravated crime against nature on May 20, 1987 and had been sentenced on August 6, 1987 to ten years at hard labor without benefit of parole, probation or suspension of sentence. On appeal, the State argued that the evidence of the initial sentence and the defendant's statement to arresting officers that he was on parole were sufficient to prove the cleansing period had elapsed. However, the appellate court held that the initial sentence was insufficient to prove the cleansing period had elapsed for purposes of La. R.S. 14:95.1, citing State v. Dennis, 569 So.2d 566 (La. App. 1 Cir. 1990) and State v. Miller, 499 So.2d 281 (La. App. 1 Cir. 1986). The court further noted the defendant's statement that he was on parole was insufficient to prove beyond a reasonable doubt that the cleansing period had expired because the record showed the defendant had been sentenced for the prior felony offense without the benefit of parole, probation or suspension of sentence.

We find the instant case to be distinguishable from Knight, Dennis, and Miller. In the instant case, unlike in Knight, defendant's freedom from actual incarceration at the time of his arrest can be explained by parole (at the time defendant herein was sentenced in 1993, there was no restriction on parole for manslaughter). Moreover, in the instant case it would be impossible for the defendant to be discharged from his parole on the manslaughter conviction before 2013; thus, the ten-year cleansing period could not expire any earlier than 2023, or seventeen years from the date of defendant's arrest for carrying a concealed weapon. The impossibility of the cleansing period having expired also distinguishes the instant case from State v. Dennis and State v. Brown, which held that evidence of the initial sentence imposed is insufficient to establish the date of completion of punishment. See Knight, supra, p. 4, 738 So.2d at 1181. In Dennis, the State attempted to prove that the cleansing period had not elapsed by showing that on a prior conviction in California, the defendant had been sentenced to an eighteen-month probationary period which was scheduled to have expired on a date that was within ten years of his second arrest by a mere four months. The First Circuit held that the State's proof was insufficient because it failed to exclude the possibility that the defendant had been released early from his probation. Dennis, supra, at 569. Similarly, in State v. Brown, the First Circuit held that the State's failure to prove when the defendant's two-year probationary period had actually ended (as opposed to the date the period started and the date it was scheduled to have ended) was not sufficient to show that the

cleansing period had not expired, under circumstances where the cleansing period would have expired only eight months after the probationary period was scheduled to have ended. Brown, *supra*, at 283.

In the instant case, at the time of his arrest for carrying a concealed weapon, the defendant had to have been on parole for his manslaughter conviction unless his sentence had been pardoned or commuted. Regarding the possibility of a pardon or commutation with respect to the analogous ten-year cleansing period found in the habitual offender statute (La. R.S. 15:529.1), this court has stated:

> While it is possible, though highly improbable, that defendant received a pardon or commutation of either his 1986 sentence or his 1993 sentence, the record reflects that **"more probably than not"** the cleansing period had not expired. This has been held sufficient to sustain a habitual offender adjudication. See State v. Turner, 365 So.2d 1352, 1355 (La. 1978). (emphasis added).

State v. Young, 2003-1690, p. 4 (La. App. 4th Cir. 12/10/03), 863 So.2d 658.

Similarly, in the instant case we conclude that the possibility that defendant may have received a pardon or a commutation of his manslaughter sentence more than ten years prior to his arrest for the instant offense is so remote that its existence would not create a reasonable doubt as to the non-expiration of the cleansing period. Viewing all the evidence in the light most favorable to the prosecution, any rational trier of fact could have found all of the essential elements of the offense of possession of a firearm by a convicted felon proven beyond a reasonable doubt, including that the ten-year cleansing period had elapsed.

We therefore reject this assignment of error.[14]

---

[14] State v. Jefferson, No. 2008-KA-0470, at pp. 9-13; State Rec., Vol. II of III.

The Louisiana Supreme Court likewise denied petitioner's related writ applications raising this claim.[15]

Petitioner's claim is that there was insufficient evidence to support his conviction. Such claims are to be analyzed pursuant to the standard set forth in Jackson v. Virginia, 443 U.S. 307 (1979), which held that "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. at 319.

In evaluating the sufficiency of the evidence, the Jackson standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." Jackson, 443 U.S. at 324 n.16. Under Louisiana law, "[t]he elements of [La.Rev.Stat.Ann. § 14:95.1] are: (1) possession of a firearm; (2) conviction of an enumerated felony; (3) absence of the ten year statutory period of limitation; and (4) general intent to commit the offense." State v. Husband, 437 So.2d 269, 271 (La. 1983); see also State v. Caffrey, 15 So.3d 198, 202 (La. App. 5th Cir. May 12, 2009), writ denied, 27 So.3d 297 (La. 2010); State v. Ray, 961 So.2d 607, 610 (La. App. 2nd Cir. 2007).

In the instant case, petitioner argues that the state failed to prove the third of those elements. Regarding that third element, the law specifically provides:

> The provisions of this Section prohibiting the possession of firearms and carrying concealed weapons by persons who have been convicted of certain felonies shall not apply to any person who has not been

---

[15] State v. Jefferson, 9 So.3d 138 (La. 2009) (No. 2008-K-2523); State v. Jefferson, 9 So.3d 162 (La. 2009) (No. 2008-K-2663); State Rec., Vol. III of III.

> convicted of any felony *for a period of ten years from the date of completion of sentence, probation, parole, or suspension of sentence*.

La.Rev.Stat.Ann. § 14:95.1(C)(1) (emphasis added). Thus, "in a trial of this offense the State *must prove beyond a reasonable doubt* not only that a convicted felon possessed a firearm, but *the date of completion of the punishment* as well." State v. Hathaway, 411 So.2d 1074, 1077 (La. 1982) (emphasis added).

In the instant case, the parties made a limited stipulation concerning petitioner's prior conviction:

THE COURT:

> Ladies of the Jury, Gentlemen of the Jury, please be advised as to the gentleman Mr. Chris Jefferson, represented by Mr. Hurtt, he and the State do agree that Mr. Jefferson before you is one and the same Mr. Jefferson who does have a prior conviction for manslaughter. It was the result of a plea of guilty in this courthouse in Case Number 359-721 and that this conviction, again, was the result of a plea of guilty on the date of August 26, 1993. The sentence that the gentleman thereafter received was 21 years at hard labor on August the 26th of 1993.
>
> Both sides therefore do agree that it would have been illegal for Mr. --

MR. HURTT:

> Actually, I am not going to stipulate that it would have been illegal for him to carry that. I am going to stipulate that he did have a conviction –

THE COURT:

> I am sorry, I thought it was the standard stipulation. It is not, and I apologize.
>
> ....

Nonetheless, both sides do agree that the date of the guilty plea was in 1993 for the crime of manslaughter, and that there was a 21 year sentence imposed.

Are you satisfied with that being the stipulation?

MR. HURTT:

Yes, Your Honor.[16]

That stipulation, therefore, relates to only the *second* of the four elements of the crimes previously noted, i.e. the fact of a prior conviction. It does *not* establish when the sentence on that conviction was actually completed, and it is undisputed that the state failed to introduce any evidence whatsoever on that issue.

It is clear that such a stipulation alone is insufficient. In fact, in <u>State v. McKnight</u>, 37 So.3d 1050 (La. App. 4th Cir.), <u>writ denied</u>, 38 So.3d 356 (La. 2010), the Louisiana Fourth Circuit Court of Appeal, the very same court which rejected petitioner's claim, recently invalidated another defendant's conviction based on a similar stipulation. In <u>McKnight</u>, the court explained:

A careful review of the trial transcript reflects that the only evidence of defendant's predicate offense was the stipulation that the State could establish through a fingerprint expert that the defendant was the same person who pled guilty to simple burglary of inhabited dwelling on February 14, 1995. Defendant contends that because the conviction occurred more than thirteen years prior to the commission of the instant offense and no evidence was presented regarding the defendant's sentence, or more importantly, when the sentence was completed, then the evidence was insufficient to prove the crime charged.

The State argues, as the trial court found in denying defendant's post verdict judgment of acquittal, that when defendant stipulated to his previous conviction, that necessarily entailed a stipulation "to the entire evidence associated with the conviction,

---

[16] Supplemental State Rec., Vol. I of II, transcript of March 26, 2007, pp. 113-14.

including the sentence and cleansing period." A similar factual scenario developed in the <u>State v. Coleman</u>, 2009-106 (La.App. 3 Cir., 10/07/09), 20 So.3d 1163, where the defendant argued that the stipulation entered was insufficient to establish absence of a ten-year period between his previous conviction and the commission of the charged offense. As here, that stipulation was silent regarding the ten-year period and in fact failed to even specify the date of the previous conviction, which had in fact occurred well within the ten-year period. The State argued that the whole point of the stipulation was to obviate the need to introduce the records necessary to establish the ten-year cleansing period and that without the stipulation the State would have done so with the records in its file.

However, the court found the State's argument unpersuasive stating:

> The fact that no evidence of the ten-year cleansing period was presented is not in dispute. The words of the stipulation, admitted by both the State and Defendant, show only that Defendant had been convicted of a "predicate offense." We are unable to find any jurisprudence that defines "predicate offense" in the manner suggested by the State to include the cleansing period. The wording of the stipulation did not address the ten-year cleansing period, and no other evidence established that it had not passed. Thus, proof of an element of the crime is lacking.

<u>State v. Coleman</u>, p. 5, 20 So.3d at 1166.

The State argues further that the presence of the docket number of defendant's predicate conviction on the bill of information which was read to the jury was sufficient to establish the ten-year cleansing period. In support, the State looks to the court's observation in <u>Coleman</u> that if the State had included the docket number in its stipulation, proof of the required element would have been undisputed. However, <u>Coleman</u> is factually inapposite for two reasons: 1) Coleman's predicate conviction occurred within the ten-year period, and 2) the docket number of the case established the year in which the case was filed. Because neither of these two conditions is present here, the presence of the docket number on the bill of information failed to establish the third element of La. R.S. 14:95.1.

A stipulation, like any other evidence, speaks for itself.  Here, the stipulation failed to address the ten-year cleansing period, and because the conviction occurred more than ten years prior to defendant's possession of the weapon, the State failed to establish "possession of the weapon within less than ten years from the date of completion of sentence, probation, parole, or suspension of sentence of the felony conviction."  Accordingly, we reverse defendant's conviction and sentence.

McKnight, 37 So.3d at 1052-53.

Similarly, in the instant case, the stipulation did not address the cleansing period, petitioner's prior conviction (August 26, 1993) was more than ten years prior to the date of the instant offense (March 29, 2005), and there was no evidence introduced regarding the completion date of his prior sentence.  Although he received a twenty-one year sentence on the prior conviction, he was clearly out of jail at the time the instant offense occurred; however, no evidence was presented concerning the status of the prior sentence or how he came to be out of jail.  Despite the ease with which the state could have proved whether petitioner's punishment had terminated and, if so, on what date,[17] the state simply elected not to offer any evidence whatsoever on that issue.

Additionally, it was obviously possible that petitioner's punishment had terminated more than ten years prior to the commission of the instant offense.  As even the Louisiana Fourth Circuit Court of Appeal grudgingly acknowledged in its opinion, petitioner could have been pardoned or his sentence could have been commuted on the prior offense.  Where, as here, there was simply no proof presented on the crime's third element and it was possible for the ten-year period

---

[17]  "The comparative ease with which the state can prove the date of termination of defendant's sentence is an important consideration. The prosecution is accorded easy access to such information." State v. Williams, 366 So.2d 1369, 1375 (La. 1987), overruled on other grounds, State v. Landry, 588 So.2d 345 (La. 1991).

to have elapsed, even the state courts have noted that a rational trier of fact cannot find that the state proved all essential elements of the crime beyond a reasonable doubt. See, e.g., State v. Dennis, 569 So.2d 566, 568-69 (La. App. 1st Cir. 1990); State v. Miller, 499 So.2d 281, 283 (La. App. 1st Cir. 1986).

For the foregoing reasons, this Court finds that petitioner has demonstrated that the state court's decision involved an unreasonable application of Jackson v. Virginia, 443 U.S. 307 (1979). Therefore, even under the AEDPA's stringent standards of review, the state court decision is not entitled to deference. Accordingly, having determined that there was insufficient evidence to support the conviction, the undersigned recommends that federal *habeas corpus* relief be granted based on this claim and that petitioner be discharged from custody with respect to the conviction. Moreover, because the conviction is invalid due to insufficient evidence, the Double Jeopardy Clause bars the state from retrying petitioner on this same charge. Burks v. United States, 437 U.S. 1, 11 (1978) ("The Double Jeopardy Clause forbids a second trial for the purpose of affording the prosecution another opportunity to supply evidence which it failed to muster in the first proceeding."); Donahue v. Cain, 231 F.3d 1000, 1005 (5th Cir. 2000).

### C. Evidentiary Rulings

Lastly, petitioner argues that the trial court erred in its evidentiary rulings. On direct appeal, the Louisiana Fourth Circuit Court of Appeal rejected that claim, holding:

> [D]efendant argues that the trial court erred in permitting the introduction [of] copies of evidence cards/receipts reflecting that two firearms and narcotics had been booked into evidence in connection with the arrests of defendant and his codefendant Terrence Harris. Defendant raises two arguments with regard to the introduction of this evidence: (1) the State's attempt to prove the existence of the

– 21 –

shotgun by the evidence card, rather than by producing the gun, deprived him of his "right to confront the evidence;" and (2) the evidence should not have been admitted because copies, rather than originals, of the evidence cards were produced.

As to his first contention, defendant fails to cite any authority categorizing the State's failure to produce the shotgun as a violation of defendant's right to confrontation under the Confrontation Clause of the Sixth Amendment to the U.S. Constitution or La. Const. art. 1, § 16. The Sixth Amendment guarantees the right of an accused in a criminal prosecution "to be confronted with the witnesses against him." La. Const. Art. 1, § 16 states, in pertinent part, that "[a]n accused is entitled to confront and cross-examine the witnesses against him." "The main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination ...." Davis v. Alaska, 415 U.S. 308, 315-316, 94 S.Ct. 1105, 1110[,] 39 L.Ed.2d 347 (1974), quoting 5 J. Wigmore, Evidence § 1395, p. 123 (3d ed. 1940). The right to confrontation "applies to 'witnesses' against the accused – in other words, those who 'bear testimony'." Crawford v. Washington, 541 U.S. 36, 51, 124 S.Ct. 1354, 1364, 158 L.Ed.2d 177 (2004). Thus, in the instant case, the State's failure to produce the shotgun seized from defendant did not impinge upon defendant's right to confrontation.

As to the introduction of copies of the evidence cards, which reflected that the Clerk of Orleans Parish Criminal District Court received evidence in the case consisting of narcotics and two firearms, at trial defense counsel objected to that evidence on the ground that the copies were not signed and were not the originals. In overruling the objection, the trial court noted that the copies "would have to be introduced subject to the rules of evidence as we know them to exist."

The issue of admissibility is covered by Louisiana Code of Evidence articles dealing with the contents of writings, recordings and photographs. La. C.E. art. 1002 states that to prove the content of a writing, recording or photograph, the original is required, except as otherwise provided by the Code of Evidence or other legislation. La. C.E. art. 1005 states that the contents of an official record, or of a document authorized to be recorded or filed, if otherwise admissible, may be proved by a copy "certified as correct in accordance with Article 902 or testified to be correct by a witness who has compared it with the original." In the instant case, the copy of the evidence card listing the guns was not certified as correct. Nor did Orleans Parish Criminal District Court Clerk's Office employee

Donna Thompson testify that she had compared the copy with the original and that the copy was correct. Therefore, the copy of the evidence card was not admissible under La. C.E. art. 1005.

La. C.E. art. 1003 provides that a duplicate is admissible to the same extent as an original unless: (1) a genuine issue is raised as to the authenticity of the original; (2) under the circumstances it would be unfair to admit the duplicate in lieu of the original; or (3) the original is closely related to a controlling issue, such as a testament offered for probate or a contract on which a claim or defense is based. La. C.E. art. 1003. In the instant case there is no indication that there is a genuine issue as to the authenticity of the original evidence cards or any circumstances suggesting that it would be unfair to admit the duplicates in lieu of the original cards. However, the original gun evidence is closely related to a controlling issue, given that its only relevance is that it tends to support the State's contention that defendant possessed a firearm. Therefore, under La. C.E. art. 1003, the duplicate evidence card would not be admissible.

Nevertheless, Official Comment (a) (1988) to La. C.E. art. 1003 states that when an original document is central to the case, and thus the duplicate is inadmissible under La. C.E. art. 1003, the duplicate may nevertheless be admissible under La. C.E. art. 1004.

La. C.E. art. 1004 states:

> The original is not required, and other evidence of the contents of a writing, recording, or photograph is admissible if:
>
> **(1) Originals lost or destroyed.** All originals are lost or have been destroyed, unless the proponent lost or destroyed them in bad faith;
>
> **(2) Original not obtainable.** No original can be obtained by any available judicial process or procedure;
>
> **(3) Original in possession of opponent.** At a time when an original was under the control of the party against whom offered, he was put on notice, by the pleadings or otherwise, that the contents would be a subject of proof at the hearing, and he does not produce the original at the hearing;
>
> **(4) Collateral matters.** The writing, recording, or photograph is not closely related to a controlling issue; or

**(5) Impracticality of producing original.** The original, because of its location, permanent fixture, or otherwise, cannot as a practical matter be produced in court; or the cost or other consideration to be incurred in securing the original is prohibitive and it appears that a copy will serve the evidentiary purpose.

In the instant case, no explanation was offered by Donna Thompson as to why she brought an uncertified, unsigned copy of the card to trial instead of the original evidence card. The State did not ask Thompson why the original was not produced, and it made no attempt to explain why it was not produced. There is no indication that the original was lost, destroyed or unobtainable, and it was not in possession of either defendant or his codefendant. Finally, the State produced no evidence, testimonial or otherwise, that the original, because of its location or otherwise, could not as a practical matter be produced in court. Therefore, the copy of the card was not admissible under La. C.E. art. 1004.

The State failed to show that the copy of the evidence card listing the two guns purportedly seized from defendant and his codefendant Terrence Harris or the copy of the card evidencing the narcotics seized from them were admissible in lieu of the originals. We therefore find that the trial court erred in admitting the copies.[FN]

[FN]  The admission of the narcotics card has no bearing upon this appeal.

However, considering the circumstances of this case, we find that the error was harmless. Officer Devin Joseph testified that he saw the barrel of a shotgun protruding from defendant's T-shirt as defendant was fleeing to the residence. Sgts. Ganthier and Sherman Joseph were in hot pursuit of the individuals, including defendant, who retreated into the residence. Sgts. Ganthier and Sherman Joseph went upstairs because they heard someone going up the stairs. They both testified that they went into a bedroom when they got upstairs, and that defendant was inside trying to hide under a bed. Both further testified that they observed a shotgun on the floor next to defendant when Sgt. Joseph lifted up the mattress. Sgt. Joseph testified the shotgun was right next to defendant. Officer Joseph testified that the shotgun seized from defendant had a pistol grip and

measured approximately fourteen inches long, which is consistent with the bill of information charging defendant with possessing a sawed-off shotgun.

Viewing this and all the other evidence in [the] light most favorable prosecution, and excluding any evidence relating to the copy of the gun evidence card, any rational trier fact could have found that defendant possessed a firearm within the meaning of La. R.S. 14:95.1.

Therefore, any error by the trial court in admitting copies of the evidence card, which were admitted for record purposes only, and this were not examined by the jury, was harmless beyond a reasonable doubt. That is, the verdict was surely unattributable to any such error. State v. Robinson, 2006-1537, pp. 9-10 (La. 1/16/08), ___ So.2d ___, ___, 2008 WL 343131; State v. Vale, 96-2953, p. 2 (La. 9/19/97), 699 So.2d 876, 877.

We therefore reject this final assignment of error.[18]

The Louisiana Supreme Court likewise denied petitioner's related writ application raising this claim.[19]

The United States Fifth Circuit Court of Appeals has held: "In habeas actions, [a federal court] does not sit to review the mere admissibility of evidence under state law." Little v. Johnson, 162 F.3d 855, 862 (5th Cir. 1998). Therefore, to the extent that petitioner is arguing that the state courts merely misapplied state law with respect to this claim, his claim is not reviewable in this federal proceeding.

Moreover, to the extent that petitioner is arguing that the introduction of the evidence violated federal law, he has failed to demonstrate that he is entitled to *habeas* relief on that basis.

---

[18] State v. Jefferson, No. 2008-KA-0470, at pp. 14-18; State Rec., Vol. II of III.

[19] State v. Jefferson, 9 So.3d 162 (La. 2009) (No. 2008-KO-2663); State Rec., Vol. III of III.

The improper admission of evidence does not necessarily warrant federal *habeas corpus* relief. Rather, the United States Fifth Circuit Court of Appeals has noted:

> We will not grant habeas relief for errors in a trial court's evidentiary rulings unless those errors result in a "denial of fundamental fairness" under the Due Process Clause. The erroneous admission of prejudicial evidence will justify habeas relief only if the admission was a crucial, highly significant factor in the defendant's conviction.

Neal v. Cain, 141 F.3d 207, 214 (5th Cir. 1998) (citations omitted); see also Little, 162 F.3d at 862 ("[O]nly when the wrongfully admitted evidence has played a crucial, critical, and highly significant role in the trial will habeas relief be warranted."). In the instant case, the evidence at issue simply cannot be said to have played a crucial, critical, and highly significant role in petitioner's conviction in light of the eyewitness testimony presented establishing that petitioner was in fact in possession of the gun. The evidence card at issue was merely cumulative evidence of a fact established through other means and, therefore, petitioner has failed to meet his burden to demonstrate that the admission of the card resulted in a denial of fundamental fairness. See, e.g., Sherman v. Scott, 62 F.3d 136, 142 n.6 (5th Cir. 1995); Johnson v. Blackburn, 778 F.2d 1044, 1051 (5th Cir. 1985).

Accordingly, petitioner has failed to demonstrate that the state court's decision on this claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Applying the AEDPA's deferential standard, this Court therefore rejects petitioner's claim regarding the admission of the evidence.

## **RECOMMENDATION**

Accordingly, **IT IS RECOMMENDED** that petitioner's application for federal *habeas corpus* relief be **GRANTED** on the basis that there was insufficient evidence to support his

conviction. **IT IS FURTHER RECOMMENDED** that he be discharged from custody with respect to this conviction.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[20]

New Orleans, Louisiana, this twenty-third day of September, 2010.

_____
**SALLY SHUSHAN**
**UNITED STATES MAGISTRATE JUDGE**

---

[20] Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.